## CIRCUIT COURT OF FAIRFAX COUNTY

Haruko Yoshida
and Takahiro Yoshida

v.

Capital Properties
Management, Inc.

July 26, 2005

Case No. (Law) 222901

BY JUDGE JONATHAN C. THACHER

This matter came before the Court on April 22, 2005, on the Defendant's Motion to Dismiss. The Defendant's motion is styled a Motion to Dismiss; the Court, however, has determined that the proper pleading under Virginia law is a Plea in Bar. For purposes of this letter, the Court will refer to the motion as the Plea in Bar. At that time, the Court took the matter under advisement. After considering counsels' arguments and memoranda of law submitted in this case and reviewing the applicable law, the Court reaches the findings and conclusions stated below.

### Background

Hiroto Yoshida, a minor ("the Decedent") fell to his death on May 12, 2002, when he climbed onto the sill of an open window in the family's fourteenth story apartment in Fairfax and pushed against a window screen. The window screen gave way, and Hiroto fell to his death. His parents were not in the room at the time and only discovered the accident when his mother entered the room and found the screen missing from the open window. Plaintiffs Haruko and Takahiro Yoshida (the Plaintiff Parents)

filed this action, a Wrongful Death Suit on May 12, 2004. The Motion for Judgment (MFJ) relies on Va. Code Ann. § 8.01-56, which allows a personal representative to file a Wrongful Death action for an injured person who later dies of those injuries.

Count I: Violation of Virginia Landlord Tenant Act (failing to comply with Virginia Building Code).

Count II: Violation of Virginia Landlord Tenant Act, Breach of Warranty of Fitness and Habitability.

Count III: Negligence (that the screens were insecurely fastened to the window frame, a situation that could have been easily remedied, and that such negligence was the proximate cause of Hiroto's death.)

The Plaintiff Parents contend that Capital Properties Management, Inc., the company that manages the apartment complex, Fairfax Towers, knew that the screens had a history of not staying in the windows and that falling screens were such a commonplace event at the apartment building that the maintenance crews had, on occasion, replaced so many that they had run out of screens. Plaintiff Parents contend that the Defendant had a duty to comply with the building code and make the window screens "safe" and the apartment "habitable."

The Defendant, Capital Properties Management, Inc., filed a Motion to Dismiss, which is based on the Plaintiff Parents' not being a proper party to bring suit under § 8.01-50(B), which requires that a Wrongful Death Suit be brought by the personal representative. The Plaintiff Parents have responded with a Response to the Motion to Dismiss, and a Motion to Amend the MFJ, along with an amended MFJ. In the Amended Motion for Judgment, they seek to add a personal representative, qualified under Virginia law, to the case as a plaintiff.

### Defendant's Motion to Dismiss (Plea in Bar)

The Defendant contends that the present action should be dismissed, as the Plaintiff Parents are not the proper parties to bring suit under Va. Code Ann. § 8.01-50, the Wrongful Death Statute. The relevant section reads;

> B. Every such action under this section shall be brought by and in the name of the personal representative of such deceased person within the time limits specified in § 8.01-244.

Va. Code Ann. § 8.01-50.

The Defendant further argues that an action by a dead person is a nullity, basing this premise on *Janakiev v. Robertson*, 34 Va. Cir. 523 (Winchester 1991). The. Defendant contends that the parents of the Decedent are not the personal representatives of the Decedent and were not qualified as required by Virginia law when this action was filed. Because the Motion for Judgment was filed on the last day of the Statute of Limitations, the statute has run, and the Plaintiffs can no longer substitute or join another party. Defendant asks that the Motion for Judgment be dismissed.

### *Plaintiff Parent's Opposition*

Plaintiff Parents argue that the statement in the Motion for Judgment that they bring this suit "on behalf of themselves and the Estate of their thirty-two (32) month-old son, Hiroto Yoshida. . . ." is sufficient to identify the parents as the personal representatives of Hiroto's estate. They add that they have brought a Motion to Amend the Motion for Judgment to clarify their status in the caption of the case and to join a Virginia-appointed personal representative, James L. Boring, Esq. Mr. Boring was appointed as personal representative for the Decedent on March 25, 2005, some ten months after the expiration of the two-year limitation.

Plaintiff Parents advance two arguments as to why the action should not be dismissed. The first is that the Plaintiffs are seeking to amend the Motion for Judgment to join Mr. Boring, the Virginia-appointed personal representative as a plaintiff. In their opening paragraph, the Plaintiff Parents concede that they have not been "appointed by a Virginia court as the personal representatives of Hiroto's estate." They contend, however, that they are "real parties in interest" in the case because they have the right to administer Hiroto's estate in Japan. The Plaintiffs cite to the Supreme Court of Virginia's ruling in *McDaniel v. North Carolina Pulp Co.*, 198 Va. 612, 95 S.E.2d 201 (1956), to support their contention that as "real parties in interest" they had standing to file the suit and the Statute of Limitations was therefore tolled.

The second argument is that, even if the Plaintiff Parents did not have standing under Virginia law to file the suit and are not able to amend to join an in-state personal representative, the fact that they are the personal representatives of the Decedent's estate in Japan means that they can file suit here. It is the Plaintiff's position that the Court should recognize their status under Japanese law and adopt that view of the law in

Virginia. Plaintiff Parents point to *McDaniel v. Carolina Pulp Co.*, 198 Va. 612, 95 S.E.2d 201 (1956), as being instructive. They also argue that, since the amendment of Va. Code Ann. § 26-59 (which allows foreign personal representatives to attain the status of a personal representative in Virginia), Virginia law would now allow the suit by the Plaintiff Parents to stand on its own, given the amendment.

To support their contention that the Plaintiff Parents are foreign "personal representatives," they attach the affidavit of Professor Masato Dogauchi, a professor expert in Japanese tort and family law, which they claim supports the proposition that the Plaintiff Parents are the personal representatives of Hiroto and have the same status under the law as the father in the *McDaniel* case.

### Defendant's Opposition to Plaintiff's Motion for Leave to File an Amended Motion for Judgment

Defendant points out that nowhere in the Motion for Judgment do the Plaintiff Parents allege anything about their status other than the fact that they are the parents of the Decedent, and that they are suing on behalf of themselves and the estate of Hiroto. The Defendant argues that the Plaintiff Parents had no standing to bring the original action, and that joining or substituting another party would be improper and, even if the Plaintiff Parents are the Foreign Administrators of the Estate of Hiroto Yoshida, they still lacked standing to bring the suit under Virginia law.

Defendant cites to *Brake v. Payne*, 268 Va. 92, 597 S.E.2d 59 (2004), as standing for the proposition that a new plaintiff cannot be substituted for an original plaintiff who lacked standing. The proper remedy, then, is to file for a nonsuit and reinstitute the cause of action. Defendant also argues that Professor Dogauchi's affidavit as to Japanese law is irrelevant; the fact that a personal representative is not required in Japan for a wrongful death suit has no bearing on Virginia law. Defendant advances the argument that a "personal representative" under Virginia law is a qualified fiduciary and that a "personal representative" under Japanese law, is not the same thing. The Defendant claims that Virginia law requires that a personal representative be qualified as such, since they stand in a fiduciary relationship to the Decedent, and that such "automatic" qualification as asserted under Japanese law is not the equivalent. The Defendant further argues that, since the Plaintiff Parents had no standing to begin with, the statute of limitations did *not* toll during the suit and that the Plaintiff Parents are effectively "out of court."

Defendant argues that they cannot now substitute a proper plaintiff, the personal representative, James L. Boring.

## *Analysis*

The Court is faced with only one issue, whether or not Haruko and Takahiro Yoshida, parents of Hiroto, had standing to file this suit on May 12, 2004, the last day under the Statute of Limitations for a Wrongful Death Suit. If the parents were proper plaintiffs and had standing, then they can join a Virginia-qualified personal representative as the Statute has been tolled. Under the Plaintiff's second argument, if the parents are accorded the status of personal representative because they are "real parties in interest," as they claim Japanese law allows, the parents had standing to bring the suit on their own and can proceed, with or without the joinder of Mr. Boring. If the parents were not proper plaintiffs, the Statute of Limitations on the cause of action has run, and Mr. Boring, regardless of his current status as the qualified personal representative under Virginia law, cannot be joined and the case cannot go forward.

## *Motion for Leave to Amend the Pleadings and Join the Personal Representative*

Plaintiff Parents wish to join Mr. Boring, the personal representative, and argue that, since they had standing to bring this suit, the Statute of Limitations has been tolled and they can join another plaintiff. Plaintiffs concede that they "have not themselves been appointed by a Virginia court as the personal representatives of Hiroto's estate." (Plaintiff's Opposition to the Motion to Dismiss, p. 2.)

Virginia law allows actions by nonresident fiduciaries, but requires that a certain procedure be followed to qualify such persons under Virginia law.

> A natural person, not a resident of this Commonwealth, may be appointed or allowed to qualify or act as personal representative, or trustee under a will, of any decedent, or appointed as guardian of an infant's estate, or guardian or conservator of the property of an incapacitated person under Article 1.1 (§ 37.1-134.6 *et seq.*) of Chapter 4 of Title 37.1.

Qualification of such person as a personal representative, or trustee under a will of any decedent, shall be subject to the provisions of Article 1 (§ 64.1-116 *et seq.*) of Chapter 6 of Title 64.1.

At the time of qualification or appointment, each such person shall file with the clerk of the circuit court of the jurisdiction wherein such qualification is had or appointment is made his consent in writing that service of process in any action or proceeding against him as personal representative, trustee under a will, conservator, or guardian or any other notice with respect to the administration of the estate, trust, or person in his charge in this Commonwealth may be by service upon the clerk of the court in which he is qualified or appointed, or upon such resident of this Commonwealth and at such address as he may appoint in the written instrument. In the event of the death, removal, resignation, or absence from this Commonwealth of a resident agent or any successor named by a similar instrument filed with the clerk, or if a resident agent or any such successor cannot with due diligence be found for service at the address designated in such instrument, then any process or notice may be served on the clerk of such circuit court. Notwithstanding §§ 37.1-134.15 and 64.1-121, where any nonresident qualifies, other than as a guardian, pursuant to this subsection, bond with surety shall be required in every case, unless a resident personal representative, trustee, or fiduciary qualifies at the same time or the court or clerk making the appointment waives surety under the provisions of § 26-4.

Va. Code Ann. § 26-59(A).

The Plaintiff Parents have submitted a proposed Order with their Opposition to the Defendant's Motion to Dismiss (Plea in Bar), in which they analogize the parents' position in the instant case to that of the father in *McDaniel v. Carolina Pulp Co.*, 198 Va. 612, 95 S.E.2d 201 (1956).

In *McDaniel*, the Plaintiff's Decedent was killed in an accident with a truck driver on November 11, 1952. His father, a Nevada resident, qualified as administrator of his son's estate in Nevada. He then filed his suit in Virginia against the truck driver on September 22, 1953, approximately ten months after the death. The Virginia Wrongful Death Statute in effect at the time of McDaniel had a statute-of-limitations

period of one year. The Defendant in *McDaniel* filed its grounds of defense and then moved for summary judgment on September 1, 1954, arguing that the plaintiff father had not qualified as a personal representative in Virginia. Summary judgment was granted on December 10, 1954.

On January 7, 1955, Mary M. Persinger, a Virginia resident, qualified as the Virginia personal representative of the junior McDaniel and filed another motion for judgment. The defendant moved to dismiss on the grounds that it had not been filed within the applicable time period. The trial court dismissed the case, stating that the senior McDaniel, because he was not qualified in Virginia as the personal representative of the decedent, did not have standing to bring the initial suit thus the "saving provision" that tolled the statute of limitations did not apply and the plaintiff was outside the time limitations.

The Supreme Court of Virginia, in reversing the trial court, distinguished its ruling by saying that the senior McDaniel, although not qualified in Virginia, had been qualified in Nevada as his son's personal representative, and as such, could have brought suit in Nevada. The Court, therefore, found him a "real party in interest" and allowed him to substitute Ms. Persinger into the case.

The Plaintiff Parents rely on this holding, saying that the circumstances are similar; they maintain that, under Japanese law, they were automatically qualified as the personal representatives for their son and could therefore bring suit under Virginia law by using the same analysis as *McDaniel*.

This Court does not find the instant case to be comparable to the *McDaniel* case. The two can be distinguished by a significant measure, the senior McDaniel had already been qualified as a personal representative in Nevada. The court in *McDaniel* took special note of the fact that the qualification as a personal representative was the significant factor, not that he was the father of the decedent or his beneficiary. The court attached significance to the fact that the senior McDaniel had complied with a court's qualification process to act as a fiduciary under Nevada law. The laws of Japan, as described by Professor Dogauchi in his affidavit, require no such qualification at all, but rather allow an automatic right to sue for wrongful death. Nowhere does the excerpt of Japanese law in the affidavit use the words "personal representative."

This Court also finds the case of *Fowler v. Winchester Medical Center, Inc.*, 266 Va. 131, 580 S.E.2d 816 (2003), to be instructive. In the *Fowler* case, the Virginia Supreme Court heard argument from another

plaintiff who relied on the *McDaniel* case. In *Fowler*, the decedent's wife was appointed administrator of her husband's estate in West Virginia. Two years later, after the estate in West Virginia was closed, she filed suit in Virginia as the "personal representative" of her husband. The trial court, which was affirmed by the Supreme Court of Virginia, held that she had not qualified as a personal representative of her husband under Va. Code Ann. § 26-59. The trial court reasoned that her prior qualification in West Virginia was not sufficient as the business there had been wrapped up. The trial court dismissed her case with prejudice.

On appeal the Virginia Supreme Court specifically found that a nonresident party, who was not qualified as a personal representative in Virginia or in any other state, could not toll the statute of limitations while that suit was pending. In that case, the Plaintiff, Mrs. Fowler, conceded that she did not have standing to maintain her suit, but that she was a "real party in interest" and that she should be entitled to the tolling provision of Va. Code Ann. § 8.01-244(B), citing as her authority the *McDaniel* case. In this respect, Mrs. Fowler's situation is similar to that of the Plaintiff Parents in this case. She argued that she had the right to qualify under Virginia law and then refile the suit as if the statute had been tolled under the original suit. The Court specifically rejected this contention and affirmed the trial court.

What this Court finds relevant in both of these cases is that the plaintiff in each case was required to take affirmative action to qualify as a personal representative somewhere. In the *McDaniel* case, the father had qualified in Nevada; in the *Fowler* case, the wife had taken the steps to qualify, but that particular qualification had ended. Mr. McDaniel was able to maintain an action based on his qualification, but Mrs. Fowler was not because the qualification had lapsed. This Court concludes that the term "personal representative" as used by the Virginia legislature has a certain meaning attached and declines to accept a loose interpretation encompassing survivors and beneficiaries.

Plaintiff Parents in the instant case ask the Court to take judicial notice of the law of Japan and submit the affidavit of Professor Masato Dogauchi. This affidavit states that under the laws of Japan, the Plaintiff Parents were automatically the "personal representatives" of the Decedent upon his death and, under the analysis cited by the Virginia Supreme Court in McDaniel, this automatic "qualification" should allow them to toll the Statute of Limitations. Plaintiff Parents extend this analysis to conclude that, under Va. Code Ann. § 8.01-386, the Conflict of Laws Statute, the Court should take judicial notice and apply the law of Japan.

The Court finds a significant flaw in the Plaintiff's analysis, specifically, the court in *McDaniel* did not find Mr. McDaniel qualified as the personal representative under a Conflict of Laws question. The *McDaniel* court did not substitute Nevada law for Virginia law, and allow a beneficiary to have standing as a qualified personal representative. Rather, the court was concerned with the fiduciary aspects of a qualified personal representative and found that, because Mr. McDaniel could have sued under Nevada law, he was a "real party in interest" and had the same standing under Virginia law. This Court finds that the significant factor in the *McDaniel* case was that the Nevada law was essentially identical to the Virginia law, in that it required an affirmative action to qualify as a personal representative. Allowing Mr. McDaniel to assume a fiduciary role in Virginia was not adverse to the requirements to assume that same fiduciary role in Nevada.

The law of Japan and the law in Virginia directly conflict on this issue; Virginia requires a personal representative to assume the role of a fiduciary and requires an affirmative step to become a qualified personal representative. Japan, on the other hand, according to the affidavit of Professor Dogauchi, confers such status automatically upon the death of the decedent and, presumably, in perpetuity.

The Plaintiff Parents advance no reason why this Court should substitute the law of Japan in this case for that of Virginia. "We said that we would adhere to the *lex loci delicti*, or place of the wrong, standard that had been 'the settled rule in Virginia.' According to the settled rule, 'the *lex loci* will govern as to all matters going to the basis of the right of action itself, while the *lex fori* controls all that is connected merely with the remedy'." *Jones v. R. S. Jones & Assocs.*, 246 Va. 3, 5, 431 S.E.2d 33 (1993) (citing *Maryland v. Coard*, 175 Va. 571, 580-81, 9 S.E.2d 454, 458 (1940)).

The injury took place in Fairfax and the instant case was filed in the Fairfax Circuit Court. The only connection this case has to Japan is that the Plaintiff Parents and the Decedent are Japanese citizens. Accepting the Plaintiff Parent's interpretation of *McDaniel* would require this Court to give greater weight to a foreign law that directly conflicts with Virginia law. Were this Court to do so, any out-of-state plaintiff could conceivably argue that the laws of his domicile should apply to any action filed in Virginia courts because that is how he would be allowed to proceed under the laws of his home state of country. This Court declines to give the laws of another sovereign such precedence over the laws of this Commonwealth.

*Conclusion*

The Court finds that the Plaintiff Parents did not qualify as personal representatives as required for an action under Va. Code Ann. § 8.01-50(B). Because they did not have standing to file the instant suit, the Statute of Limitations has run on this cause of action, and they cannot now join a qualified personal representative. The Court grants the Defendant's Plea in Bar and dismisses the instant action with prejudice.